[Civ. No. 57554. Second Dist., Div. Four. May 24, 1982.]

JUAN M. BANALES et al., Plaintiffs and Respondents, v.
THE MUNICIPAL COURT FOR THE VENTURA JUDICIAL
DISTRICT OF VENTURA COUNTY, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Appellant.

68

COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders, Sharlene A. Hannaka and Michael Nash, Deputy Attorneys General, for Real Party in Interest and Appellant.

Ruth Rokeach, Manuel M. Medeiros and Daniel G. Stone as Amici Curiae on behalf of Real Party in Interest and Appellant.

Marco E. Lopez, Carlos M. Alcala, Francis E. Fernandez, Carmen S. Flores, Dianna Lyons, Federico G. Chavez and Ellen J. Eggers for Plaintiffs and Respondents.

No appearance for Defendant and Respondent.

## OPINION

WOODS, P. J.—his is an appeal from a judgment of the Ventura County Superior Court granting a writ of prohibition. The writ restrains all proceedings by the municipal court in the case of People of the State of California v. Juan M. Banales et al., on the grounds that the Agricultural Labor Relations Act preempts the jurisdiction of the municipal court to bar criminal prosecution of respondents herein.

The superior court' decision to issue the writ was based solely on pleadings and documentary exhibits; no testimony was offered. Since the factual matters in his cause were submitted on three declarations under penalty of perjury, our summary of the facts is likewise based thereon, together with th reasonable inferences drawn therefrom in the light most favorable to respondent.

On February 17, 1977, respondents, Juan M. Banales and 33 others, were farm workers, employees of Sun Harvest, Inc. and Growers Exchange, Inc., involved in labor dispute with Growers Exchange, Inc., an agricultural employer. In that date, they were picketing outside a celery field in Oxnard. Eight workers were picking celery on the employer's premises. Banales and the others (hereinafter referred to as respondents) entered into the fields to communicate with the "strike breaking farm workers."

Les Diffenbaugh, a crew supervisor for the employer, "rushed to meet the picketers, as the other security man ushered the workers into an armored labor bus away from the picketers." Diffenbaugh informed the men (through a Spanish interpreter) that they were being arrested for violating section 602, subdivision (j) of the Penal Code, for interfering with the lawful activities of the company. The respondents were subsequently charged with criminal trespass, a misdemeanor. Their motion in the municipal court to dismiss the charges, on the grounds that jurisdiction over their conduct was vested exclusively in the Agricultural Labor Relations Board (hereinafter ALRB), was denied. Respondents then brought a writ petition to the superior court, and a writ of prohibition was granted, from which this appeal is taken.

At issue is the jurisdiction of a state court over conduct which is arguably protected by the Agricultural Labor Relations Act (hereinafter ALRA). We have concluded that the superior court properly prohibited

further proceedings by the municipal court and therefore affirm the judgment appealed from.

ALRA (Lab. Code, § 1140 et seq.) is derived from the National Labor Relations Act (NLRA). (*Belridge Farms v. Agricultural Labor Relations Bd.* (1978) 21 Cal.3d 551, 556 [147 Cal.Rptr. 165, 580 P.2d 665].) It has long been recognized that NLRA vested exclusive jurisdiction in the federal National Labor Relations Board "whenever it is clear or may fairly be assumed" that activities complained of are protected by the act. Under those circumstances, state court jurisdiction must yield to the federal board. (*San Diego Unions v. Garmon* (1959) 359 U.S. 236, 245 [3 L.Ed.2d 775, 783, 79 S.Ct. 73].) When the ALRA was enacted by the California Legislature in 1975, it included two provisions, similar if not identical to the language of the federal act, evincing a clear legislative intent that the ALRB shall have exclusive jurisdiction over conduct covered by the act. Labor Code section 1160.9 provides: "The procedures set forth in this chapter shall be the exclusive method of redressing unfair labor practices.'

Also pertinent to the issue presented here is Labor Code section 1166.3, subdivision (b), which provides: "If any other act of the Legislature shall conflict with the provisions of this part, this part shall prevail."

Not only does the ALRB have exclsive jurisdiction over conduct protected by the act, but the initial detemination as to whether particular conduct is so protected must be made by the board and not the court. Numerous federal decisions first recognized the importance of such a rule. (See, e.g., *San Diego Union v. Garmon, supra,* 359 U.S. at p. 245 [3 L.Ed.2d at p. 783]; *Garner v Teamster's Union* (1953) 346 U.S. 485, 490 [98 L.Ed. 228, 239, 74 S.Ct. 161].) And before the enactment of the ALRA, California courts also acknowledged that "so long as it can be argued that trespasoy union activity is protected under section 7 [of the NLRA], *it s initially within the exclusive competence of the Board* to reconcile these section 7 rights with private property rights; state court jurisdiction is displaced." (*Sears, Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters* (1976) 17 Cal.3d 893, 899 [132 Cal.Rptr. 43, 553 P.2d 603]; italics added.) Once ALRA was enacted, California courts quickly acknowledged its foundational relationship and similarity to NLRA and California's willingness to follow federal precdent in its interpretation. (See *Kaplan's Fruit & Produce Co.* v. *Superior Court* (1979) 26 Cal.3d 60, 67-

71 [162 Cal.Rptr. 745, 603 P.2d 1341]; *Belridge Farms* v. *Agricultural Labor Relations Bd., supra,* 21 Cal.3d at p. 558.)

It is also well established in California that "there is no exception permitting state courts to exercise jurisdiction over peaceful labor activity merely because it involves trespass on private property." (*Sears, Roebuck & Co.* v. *San Diego County Dist., Council of Carpenters, supra,* 17 Cal.3d at pp. 896-897.)

In 1981, the California Supreme Court reiterated the rule that "... trespass statutes do not apply to lawful union activity." (*In re Catalano* (1981) 29 Cal.3d 1, 11 [171 Cal.Rptr. 667, 623 P.2d 228].) In that case, the Supreme Court issued writs of habeas corpus directing that defendants be discharged from custody, where they had been arrested and convicted of trespassing after entering a construction site to inspect safety conditions and refusing to leave at the property owner's request. The court concluded: "Thus the case coalesces into a simple but important ruling. That holding emanates from the decisions of this court and from the statutory recognition of that principle by the Legislature: a labor union representative who enters upon a jobsite to engage in lawful union activity does not illegally trespass upon the land. If, however, he does not confine himself to such lawful union activity he forfeits such protection and subjects himself to liability." (*Id.,* at p. 17.)

Applying the foregoing principles and rules to the instant case, the declaration of respondents' counsel, although contradicted by the employer's declarations, states that respondents entered onto the employer's land for the purpose of communicating with nonstriking workers about a labor dispute. That lawful activity would, of course, not amount to illegal trespass.

It is argued on behalf of the board, however, as amicus curiae, and accepted by the author of the dissenting opinion herein, that the municipal court complaint, by alleging criminal activity, conferred on the court jurisdiction to try the criminal actions. We disagree.

The superior court was compelled to determine whether the respondents' activities were arguably protected by the act. The evidence before the court on that issue went beyond the allegations of the criminal complaint and consisted of three declarations by the crew supervisor, one of which constituted the basis for the criminal complaint and each of which differed materially from the others, and a declaration by counsel

for respondents which averred that the parties were engaged in an ongoing labor dispute, and that they entered the fields to conduct lawful labor-related activity. Faced with such evidence, the superior court in issuing the writ must have concluded that it could "fairly be assumed" that the actions of respondents were protected by the act, that is, arguably protected activity. (*San Diego Unions* v. *Garmon, supra*, 359 U.S. at p. 245 [3 L.Ed.2d at p. 783].)

In *Musicians Union, Local No. 6* v. *Superior Court* (1968) 69 Cal.2d 695 [73 Cal.Rptr. 201, 447 P.2d 313], an injunction was issued by the court, based upon a complaint which alleged that picketing and mass demonstrations were being conducted for the purpose of coercing employers and other employees. The Supreme Court concluded that the trial court was without jurisdiction to issue the injunction. The determination of petitioners' purpose was for the board, not the court; petitioners' purpose was "arguably" to engage in protected activity, and therefore "respondent was without jurisdiction to enjoin the activities in question." (*Id.*, at p. 710.)

The dissent seems to take the position that, whenever a prosecuting attorney elects to file a criminal charge, the jurisdiction of the board is automatically eliminated. That position undercuts what we regard as the purpose of the ALRA. The history of labor disputes during the early part of this century shows a constant imposition on the judicial system of disputes over the conduct of the parties to such disputes. Suits for injunction and criminal prosecutions were the weapons used to resolve the disputes. Ultimately, first by the NLRA and, later, in California, by the ALRA, there were created administrative tribunals having a special expertise in not only labor law in its strict sense but in the actual conduct of labor disputes. The theory of those statutes was, so far as possible, to relieve the judicial system of the burden of refereeing labor disputes.

The issuance of the instant writ furthers the legislative (and congressional) preference for the resolution of labor disputes by one expert body, rather than the courts. (*United Farm Workers* v. *Superior Court* (1977) 72 Cal.App.3d 268, 272 [140 Cal.Rptr. 87].) As the United States Supreme Court stated in *Garner* v. *Teamsters Union* (1935) 346 U.S. 485, 490-491 [98 L.Ed. 228, 239, 74 S.Ct. 161]: "Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific

and specially constituted tribunal .... Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies."

The trial court did not err in issuing a writ of prohibition against the further exercise of municipal court jurisdiction in this matter. Where it is apparent that conduct arguably falls within the protection of the act, the doctrine of preemption deprives the state of jurisdiction. (*Kaplan's Fruit & Produce Co.* v. *Superior Court, supra*, 26 Cal.3d at p. 70.)

The judgment is affirmed.

Kingsley, J., concurred.

**FILES, J.,** * Dissenting.—I would reverse the order of the superior court for the reasons given in the amicus curiae brief of the Agricultural Labor Relations Board.

It is first necessary to collate the material facts upon which the superior court based its decision.

The manager of a farm presented to the District Attorney of Ventura County declarations stating under penalty of perjury the following: On February 17, 1979, Banales and 33 other persons interfered with the business of Bob Gill Farms, running into a field towards 8 workers who were picking celery, causing the workers to run away from their work stations. The 34 intruders were waving red rags attached to heavy sticks which were 12 to 48 inches in length and as much as 1½ inches in diameter. As the intruders advanced they shouted threats and degrading comments at the work crew. Sheriff's deputies came and took the intruders into custody.

The district attorney filed in the municipal court separate misdemeanor complaints charging each of the 34 with violation of Penal Code section 602, subdivision (j), which makes it an offense to trespass "for the purpose of injuring any property or property rights or with the intention of interfering with, obstructing, or injuring any lawful business ..."

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

Banales et al. filed in the municipal court motions to dismiss, accompanied by a declaration of their attorney stating that at the location of the alleged offenses farm workers were involved in a labor dispute, and that the defendants had entered the field to communicate with strike-breaking workers. The motions to dismiss were denied. Banales et al. then filed in the superior court a petition for a writ prohibiting the municipal court from trying the misdemeanor charges.

On April 23, 1979, the superior court made the order from which this appeal was taken.

The superior court did not purport to decide any factual issue. It treated the issue before it as one of law, and based its decisions upon the fact that Banales et al. were involved in a labor dispute.

The brief of the Agricultural Labor Relations Board sets forth this proposition derived from the reasoning of the Supreme Court in *Kaplan's Fruit & Produce Co.* v. *Superior Court* (1979) 26 Cal.3d 60 [162 Cal.Rptr. 745, 603 P.2d 1341]: The Agricultural Labor Relations Board has exclusive primary jurisdiction when the conduct which is proscribed is arguably protected under the Agricultural Labor Relations Act.

The board's brief then goes on to say: "The first level of inquiry in analyzing the Municipal Court's jurisdiction in the instant case is to determine whether the conduct which was sought to be regulated is arguably protected under the ALRA. If it is, then the Municipal Court would be without jurisdiction to proceed."

The law of California protects the access of union representatives to the employer's property when a legitimate union activity requires it. (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392 [128 Cal.Rptr. 183, 546 P.2d 687]; *In re Catalano* (1981) 29 Cal. 3d 1, 17 [171 Cal.Rptr. 667, 623 P.2d 228].) Such access is not a trespass. At the same time the decisions recognize that the access privilege is limited to the needs of legitimate union activity. The *Catalano* opinion plainly states "Only lawful union activity is exempt from prosecution for trespass." (29 Cal.3d at p. 15.)

We do not know whether the 34 petitioners were union representatives or not, nor do we know whether they entered the celery field with criminal intent. Those facts may be determined upon the evidence pro-

died at the misdemeanor trial. The principle that the accused is presumed innocent until found guilty, and the possibility that Banales et al will contest the charges do not make their conduct "arguable" within the meaning of the jurisdictional rule.

The possibility that the accused individuals may be found innocent does not deprive the municipal court of jurisdiction. The civil cases involving the use of injunctions to deal with lawless conduct make that point clear. (See *Kaplan, supra*, 26 Cal.3d 60; *Bertuccio* v. *Superior Court* (1981) 118 Cal.App.3d 363, 371 [173 Cal.Rptr. 411]; cf. *Vargas* v. *Municipal Court* (1978) 22 Cal.3d 902 [150 Cal.Rptr. 918, 587 P.2d 714] (unlawful detainer action).) In *Kaplan* at page 70 the court said: "The possibility that the Union is innocent of the charged conduct may be grounds for denying injunctive relief, but it does not invoke the preemptive jurisdiction of the board. Indeed, whenever any accusation is brought against a union, the charge may be groundless—the union may have engaged only in protected conduct—but to rest preemptive jurisdiction on that possibility would project the board's preemptive jurisdiction into all cases of charges against a union, rendering the arguably prohibited branch of the preemption doctrine superfluous."

The jurisdictional test is the nature of the conduct which the courts seek to regulate or punish. Thus, in the *Kaplan* case, which involved unlawful mass picketing, the Supreme Court said: "We conclude that so long as the court's injunction does not restrain conduct which is arguably protected by the ALRA, it does not invade ALRB's preemptive jurisdiction to adjudicate controversies concerning arguably protected activity." (26 Cal.3d at p. 71.)

The conduct proscribed by subdivision (j) of Penal Code section 602 is entry for the purpose of injuring property or obstructing a lawful business. As the brief of the board points out "Entry upon an employer's land with this stated purpose is not even arguably protected under the Agricultural Labor Relations Act."

The action of the District Attorney of Ventura County in charging the 34 invaders with a misdemeanor offense does not in any way conflict with any action which the Agricultural Labor Relations Board may have taken or wished to take concerning a labor dispute. Nor was the board in any position to take effective action to prevent or remedy the alleged breach of the peace by the 34 individuals. There is no conflict between the function of the board and the function of the municipal

court in this situation. At this time, three years after the commission of the alleged offenses, there may be valid reasons for dismissing the charges, but preemption by the Agricultural Labor Relations Board is not one of them.

Appellant's petition for a hearing by the Supreme Court was denied July 22, 1982. Bird, C. J., did not participate therein. Richardson, J. was of the opinion that the petition should be granted.