[Civ. No. 5556. Fifth Dist. Mar. 24, 1981.]

J. CARLYLE PARKER, Plaintiff and Appellant, v.
GLEN S. DUMKE, as Chancellor, etc., Defendant and Respondent.

COUNSEL

Darrel D. Tipton and John V. Powell for Plaintiff and Appellant.

George Deukmejian, Attorney General, Thomas E. Warriner, Assistant Attorney General, and Joseph O. Egan, Deputy Attorney General, for Defendant and Respondent.

OPINION

HANSON (P. D.), J.—Appellant J. Carlyle Parker, employed at California State College, Stanislaus, appeals from a judgment of the Stanislaus County Superior Court denying a petition for writ of mandate (Code Civ. Proc., § 1085) to compel respondent Chancellor of the California State University and Colleges to grant appellant's application for sabbatical leave under title 5, California Administrative Code, section 43000 et seq.

Appellant brought an application for a pay differential sabbatical period under title 5, California Administrative Code, section 43000, subdivision (c), to research and to author a work on genealogical studies. Appellant, a librarian, is an academic employee within the meaning of title 5, California Administrative Code, sections 42700, subdivision (1), and 43000, but not a classroom teacher. Because of limited funding for educational leaves, the chancellor, under the authority vested in him by Administrative Code, title 5, section 43000, has adopted a written policy, contained in the administrative manual of the California State University and Colleges, restricting sabbatical years to instructional employees. Appellant's application was denied on the basis of this policy.

Dr. Robert R. Tyndall, assistant vice chancellor for faculty and staff affairs for the California State University and Colleges, testified that the policy is based on the belief that the institution benefits most from granting such leaves of absence to the teaching staff, saying: "Sabbatical essentially is a period off from teaching when the faculty member is able to either pursue special studies . . ., or to pursue studies of new knowledge in the field. Since the instructional faculty are the ones who instruct the students and because fields are going out of date and changing so quickly, it is felt that the greatest benefit is derived from the instructional program—the reason for which we exist—by having sabbaticals confined to the instructional faculty." Dr. Tyndall further testified, and the court found, that this policy has been in effect for a decade and has been consistently and uniformly applied.

Dr. Tyndall's testimony that insufficient funds are available to grant sabbaticals even to all eligible instructors is not contradicted. He testified that at present "there's a huge faculty backlog on sabbaticals." The sabbatical periods granted, which amount to only one in twelve, are awarded upon the merit of the projects which are proposed. (Cal.

Admin. Code, tit. 5, § 43004, subd. (c).) Appellant requested relief in the trial court on the basis that the policy set out in the manual limiting such leaves to teaching personnel is contrary to Administrative Code provisions and that the denial of his application on the basis of the policy constitutes an abuse of discretion. At the end of the hearing, the trial judge stated: "It boils down to a very narrow issue. That's whether the chancellor has a right to restrict the granting of sabbaticals to teacher employees, whether he has the discretion to do that. If he doesn't have it, then he's got to review Mr. Parker's sabbatical application to determine whether it would be granted on its merits independent of the fact that he's not a teacher."

The trial court's findings of fact and conclusions of law follow:

## "FINDINGS OF FACT

"1. Petitioner is a librarian with the Stanislaus Campus of the California State University and Colleges, and is classified, pursuant to title 5, California Administrative Code, section 42700(1) as a senior librarian.

"2. Respondent is the Chancellor of the California State University and Colleges, having authority, pursuant to title 5, California Administrative Code, sections 43000, et seq., to grant or deny requested sabbatical leaves.

"3. Petitioner has requested a sabbatical leave from his position as librarian with the Stanislaus Campus of the California State University and Colleges.

"4. The State University, through its president, Walter Olsen, has denied petitioner's request because it is the written policy of the University to grant sabbatical leaves of absence to teaching personnel only.

"5. It is the policy of the Chancellor's office, pursuant to budgetary considerations, to restrict sabbatical leaves to teaching personnel.

"6. The policy limiting sabbatical leaves to teaching personnel is based on the following:

"a. Limited funding for sabbatical leaves of absence for California State University employees.

"b. The need for teaching personnel who have direct contact with students to keep abreast of developments and research in their fields of expertise.

"7. This policy has been uniformly applied; no non-teaching personnel at CSUS have been granted sabbatical leaves of absence for the past decade.

"8. Respondent has denied petitioner's request for sabbatical leave pursuant to the aforementioned policy of the Chancellor's office.

"9. Sabbatical leaves of absence for teaching personnel are not granted as a matter of right, but are granted to only a fraction (one in twelve) of the total number of teaching personnel who apply and are eligible.

"10. A pay differential sabbatical leave of absence causes indirect costs to the State University.

"CONCLUSIONS OF LAW

"1. Pursuant to California Administrative Code, title 5, section 43000, et seq., the Chancellor of the California State University has discretion to grant or deny an employee's request for sabbatical leave of absence. The Chancellor has no ministerial duty to grant such leaves, and the employee has no right to be granted such leaves.

"2. Pursuant to Code of Civil Procedure section 1085, a writ of mandate may issue to compel a public official to exercise his or her discretion but cannot control the manner in which such discretion is exercised.

"3. The California State University's policy of limiting sabbatical leaves to teaching personnel is not arbitrary, capricious or entirely lacking in evidentiary support and does not constitute an abuse of discretion.

"4. The policy limiting sabbatical leaves to teaching personnel constitutes a reasonable exercise of discretion by the Chancellor and administration of the California State University."

The first question is whether the administrative policy relied upon by respondent in denying appellant's application for a pay differential leave of absence violates the express provisions of title 5, California Administrative Code, section 43004, and Education Code section 89500.[1] It is clear that the trustees may delegate to an officer a power vested in them by the Education Code.[2]

■ The granting of a sabbatical year or lesser time is a matter given to the discretion of the chancellor under title 5, California Administrative Code, section 43000; appellant has no vested right to receive such a leave.

The Administrative Code provisions were adopted by the trustees of the university and college system under the authority of Education Code section 89500 and we consider the proper and reasonable interpretation of title 5, California Administrative Code, sections 43000-43004, by first turning "to the words themselves for the answer." (*People v. Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1]; see *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658-659 [147 Cal.Rptr. 359, 580 P.2d 1155].)

Title 5, California Administrative Code, section 43000 provides in pertinent part: "The Chancellor may grant academic or executive employees or employees serving in an academic-administrative assignment at any campus a leave of absence with pay for not to exceed one year for the purpose of permitting study or travel by the employee which will benefit the California State University and Colleges."

Under section 43000, only those applicants who have held a full-time position for six consecutive academic years are eligible for the leave. Under section 43004, applications must be submitted to the campus president and the appropriate faculty committee and then if approved

---

[1]Education Code section 89500 provides in part: "Notwithstanding any other provision of law, the trustees shall provide by rule for the government of their appointees and employees, pursuant to the provisions of this chapter and other applicable provisions of law, including, but not limited to, appointment, classification, terms, duties, pay and overtime pay, leave of absence, tenure, vacation, layoff, dismissal, demotion, suspension, sick leave and reinstatement."

[2]Education Code section 89035 provides: "Wherever in this code a power is vested in the trustees, the trustees by majority vote may adopt a rule delegating such power to any officer, employee, or committee as the trustees may designate. The rule shall prescribe the limits of such delegation."

by the president the application is sent to the chancellor for determination.

Section 43004, subdivision (c), states: "The Chancellor shall grant a leave of absence for the purpose of pursuing research, other study or travel *only* if the Chancellor is satisfied that the applicant is eligible for the leave and will during the leave of absence engage in study or travel of a kind and in an amount which will so improve and update his capabilities that during future employment of the applicant at the campus such experience will substantially enhance his value to the California State University and Colleges and to the students thereof." (Italics added.)

The provisions vest a wide discretion in the chancellor to approve or to deny sabbatical time. Nothing in the regulations mandates that the chancellor grant these leaves. The adoption and execution of a policy limiting sabbaticals to instructional staff is the exercise of discretion. This exercise of discretion when funds are insufficient for all to benefit and leaves are parceled out to only a few cannot be attacked successfully unless the discretion is exercised in an arbitrary and capricious manner. (See *State Farm etc. Ins. Co.* v. *Superior Court* (1956) 47 Cal.2d 428, 432 [304 P.2d 13].) ■ Appellant may not by writ of mandate seek to control the *manner* in which the chancellor's discretion is exercised. (*Faulkner* v. *Cal. Toll Bridge Authority* (1953) 40 Cal.2d 317, 326 [253 Cal.Rptr. 659].)

■ In considering the legality of an administrative order, the initial inquiry must be, "What has the Legislature prescribed?" (*Andrews* v. *Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781, 797 [171 Cal.Rptr. 590, 623 P.2d 151].) Here, the answer is that the Legislature has directed that the trustees shall provide for leaves of absence and section 43000 clearly states that the chancellor *may* grant academic or executive employees a leave of absence with pay. This regulation was adopted by the trustees pursuant to Education Code section 89500. Contrary to the position of the dissent, the policy expressed is the giving of discretion to the chancellor. Section 43004, subdivision (c), of title 5 of the California Administrative Code does not take away the discretion given in section 43000; it simply provides that the chancellor shall grant such a leave *only* if the chancellor is assured of the eligibility of the applicant and that the leave will enhance his value to the institution and the students; it does not say that reasonable classifications cannot be made.

In *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified School Dist., supra,* 21 Cal.3d 650, 655, the California Supreme Court discussed the history of Education Code section 13506, which provided, prior to a 1969 amendment, that, "'In cities, teachers of beginners shall be ranked in the salary schedule with the highest salaried teachers in the elementary grades of equal training and experience.'" The statute further provided that, "'Uniform allowance *may* be made in any schedule of salaries for years of training and years of service.' (Italics added.)" The court noted that it was held in *Fry* v. *Board of Education* (1941) 17 Cal.2d 753, 757-758 [112 P.2d 229], that the language of this section did not prevent the board from making "reasonable classifications" as long as they were not "arbitrary, discriminatory or unreasonable" under *Rible* v. *Hughes* (1944) 24 Cal.2d 437, 444 [150 P.2d 455, 154 A.L.R. 137]. In the *Rible* case, it was stated that if there appears to be some reasonable basis for a classification, a court will not substitute its judgment for that of the administrative body. (*Id.,* at p. 445.)

The second question is whether the chancellor's decision to grant sabbatical years to instructors only is an abuse of discretion. Because there are insufficient funds available to the state university and college system to allow all eligible academic employees paid educational leaves, a choice must be made; under current funding, it is not possible to grant more than a fraction of the leaves requested by classroom instructors.

Appellant is a librarian and, while his contribution in that role to the academic excellence of the college is unquestioned, his duty is other than in the classroom. Classroom teachers are expected to be cognizant of the most recent developments in their fields because their knowledge and experience have a direct and constant impact upon students in the classroom where the contact is regular, direct and frequent.

The chancellor, in an exercise of the discretion granted to him under the provisions of the Administrative Code, has adopted a policy of granting educational leaves to teaching staff only, based on a judgment that this allocation most benefits the students and the institution. Appellant has not shown that the sabbatical policy is unreasonable; the record supports the determination of the trial court that there is no abuse of discretion under Code of Civil Procedure section 1085.

The judgment is affirmed.

Brown (G. A.), P. J., concurred.

**HOPPER, J.**—I respectfully dissent.

I agree that petitioner does not have a right to a sabbatical leave. He does, however, have the right to be considered after filing an application and not be arbitrarily excluded before his application is considered by an unauthorized deletion of librarians as a class from those eligible for sabbatical.

The regulations adopted by the trustees specifically include librarians as an academic employee (Cal. Admin. Code, tit. 5, § 42700, subd. (1)) and thus among those who are eligible for a sabbatical (Cal. Admin. Code, tit. 5, § 43000). Nowhere do I find any authority on the part of the chancellor to decide he may reduce the eligibility list by excluding an entire class of eligibles.

The chancellor has broad discretion under California Administrative Code, title 5, section 43004; but I submit that that section should be construed with the entire set of administrative regulations adopted by the trustees pertaining to sabbaticals to the end that all eligibles must be considered subsequent to their application and not be automatically eliminated from consideration in advance because they are librarians. In the absence of such an interpretation, the chancellor would have the right to decide in advance that only instructors of a particular subject matter (such as biology) would be eligible. Only the trustees, not the chancellor, have the right to decide by duly adopted regulations *eligibility* for sabbaticals. (Ed. Code, § 89500.)

I agree that pursuant to Education Code section 89035 the trustees may delegate to an officer a power vested in the trustees. However, there is no rule delegating a power to the chancellor whereby he may exclude librarians as a class from consideration for sabbaticals. Education Code section 89035 provides that any rule delegating a power to an officer shall prescribe the limitation of such delegation. The only rule delegating a power to the chancellor with respect to sabbaticals (the discretion to grant or deny an application) includes rather than excludes librarians within its scope.

The chancellor's wide discretion given by section 43004 cannot under our system of government be construed to allow him to eliminate eligibles from even being considered. To hold to the contrary would be substituting the chancellor for the trustees whereas the Legislature gave the trustees the authority to adopt the regulations. While we cannot and

should not enter into deliberations about the wisdom of those regulations because we are not trustees—neither is the chancellor. The trustees have said petitioner is eligible; the chancellor may not rule to the contrary.

While mandate does not normally lie to control an exercise of discretion, it is nevertheless appropriate to compel an officer to exercise it under a proper interpretation of the applicable law (*Shepherd* v. *Superior Court* (1976) 17 Cal.3d 107 [142 Cal.Rptr. 612]). The regulations are clear. Librarians are included within the class of those eligible for consideration for sabbatical leave. Refusal by the chancellor to consider petitioner's application is based on an erroneous view of the regulations and of the power vested in him. (Compare *Belridge Farms* v. *Agricultural Labor Relations Bd.* (1978) 21 Cal.3d 551, 559 [147 Cal.Rptr. 165, 580 P.2d 665].)

Discussion about budgetary considerations simply clouds the issue. I grant that there is only so much money available and that money for sabbatical leave is quite limited (and is limited to appropriations available under Cal. Admin. Code, tit. 5, § 43003, subd. (b)). However, that does not authorize nonconsideration of an entire class in advance. The chancellor's discretion does not relate to who is eligible but rather to which persons eligible will "during the leave of absence engage in study or travel of a kind and in an amount which will so improve and update his capabilities that during future employment of the applicant at the campus such experience will substantially enhance his value to the California State University and Colleges and to the students thereof." (Cal. Admin. Code, tit. 5, § 43004, subd. (c).)

Respondent points to a policy adopted in the Universities and Colleges Administrative Manual (UCAM), a portion of which was introduced into evidence.[1] Reliance on that policy misses the mark. Just as is true in the case of administrative regulations and statutes, a policy that impairs the scope of administrative regulations is void and it is the obligation of the court to strike down such a policy (see *Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697], which was recently followed by the Supreme Court in *J. R. Norton Co.*

---

[1]UCAM, section 6351.02, provides: "It is implicit in the understanding with the Department of Finance concerning funding of leaves with pay that both budgeted leaves with pay and difference in pay leaves should be limited to instructional faculty as indicated in UCAM 6352."

v. *Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1, 29 [160 Cal.Rptr. 710, 603 P.2d 1306]). Respondent's policy impairs the scope of the trustee's regulations which make petitioner an employee eligible for sabbatical. Furthermore, in my opinion, such policy does not reach the status of a regulation which must be filed and published under Government Code section 11343 et seq., and may become a part of the California Administrative Code.

The judgment should be reversed with directions to issue a writ requiring the chancellor to properly consider the petitioner's application without excluding him solely because petitioner is not a teaching employee.